[Civil No. 1727.   Filed November 3, 1920.

[193 Pac. 12.]

## GEORGE TAYLOR and JOSEPHINE TAYLOR, His Wife, Appellants, v. TEMPE IRRIGATING CANAL COMPANY and NIELS PETERSON, GRANT JONES and C. M. MULLEN, Directors, Appellees.

1. MANDAMUS—RIGHT TO PROCEED IN CASE HELD ADEQUATE REMEDY PRECLUDING RELIEF BY MANDAMUS.—In *mandamus* proceedings to compel an irrigation district to furnish a certain quantity of water, relief will be refused where it appears that a decree in a former case forming the basis of plaintiffs' rights authorized plaintiffs to apply for an order in such case to interpret, enlarge, or enforce the rights thereunder; such procedure providing a better, superior and more adequate remedy than would be furnished by *mandamus.*

2. MANDAMUS—PETITIONER MUST SHOW CLEAR RIGHT TO PERFORMANCE AND CLEAR DUTY RESTING ON DEFENDANT.—Petitioner for a writ of *mandamus* must show a clear legal right to have the thing done which is asked for, and it must be the clear legal duty of the party sought to be forced to do the thing he is called on to do.

3. MANDAMUS—DECREE FORMING BASIS OF PROCEEDING HELD NOT TO SHOW LEGAL RIGHT OR DUTY.—A decree in a suit involving water rights for irrigation purposes *held* not to give petitioner in a subsequent proceeding for *mandamus* to compel an irrigation company to furnish water based on such decree a clear legal right to

require defendant therein to supply a certain amount of water for irrigation purposes nor to show that a duty to furnish such water rested upon defendant.

4. WATERS AND WATERCOURSES—ON APPLICATION FOR MODIFICATION OF DECREE APPORTIONING WATER RIGHTS FOR IRRIGATION ALL USERS SHOULD BE NOTIFIED.—Where a decree in a proceeding to determine water rights for irrigation purposes stated that the court retained jurisdiction and that the amounts of water apportioned to each of the parties were experimental merely and subject to change as conditions might require, and that users of water might apply for a modification thereof upon such application for modification, notice should be served upon all the appropriators and users of water, giving them an opportunity to be heard either in support of or in opposition to the application.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Samuel L. Pattee, Judge. Reversed and dismissed.

Messrs. Alexander, Christy & Baxter, for Appellants.

Messrs. Armstrong, Lewis & Kramer and Mr. Charles Woolf, for Appellees.

ROSS, J.—We designate the parties as plaintiffs and defendants because they occupy the same position here in relation to the issues as in the trial court. The plaintiffs, as husband and wife, are the owners of a half section of farming land located under the canal of the Tempe Irrigating Canal Company, an unincorporated association, a defendant, the other defendants being the board of directors of said company, vested with complete power to manage its affairs.

By the suit plaintiffs seek to *mandamus* the defendants, as public carriers of water, to deliver to them forty-eight inches of water, constant flow or its equivalent, for each one-quarter section, or ninety-six inches for the half section, for the purpose of irrigating the 1917 crops growing on their land, contending that in what is known as the Kent decree they were awarded that quantity of water, and thereunder it is made

the legal duty of the defendants to give that quantity of water to the plaintiffs.

The defendants' answer sets forth several defenses. The trial court disposed of the case upon the construction of the Kent decree, holding that said decree "does not impose upon defendants the duty to distribute water in any particular method or according to the priority claimed by the plaintiffs."

In that connection the court construed the Kent decree as going "no further than to provide for a distribution as between canals."

The court, after a trial of the issues, also sustained the defendants' defense that plaintiffs were estopped by permitting and acquiescing in a system of distributing the waters of the Tempe canal according to shares of stock owned in the canal company and not according to priority, thus waiving their priority.

The plaintiffs appeal, contending the views adopted by the court were erroneous.

We have come to the conclusion, after much reflection, that plaintiffs cannot be permitted to pursue the remedy of *mandamus*, because the Kent decree itself has pointed out for them and others in like situation another, better, speedier and more adequate remedy, by formal application in the case in which that decree was entered. We quote from the decree the following excerpts:

"The court retains jurisdiction of the cause and of the issues embraced herein, and, upon good cause shown, may from time to time modify, enlarge, or abrogate any portion or feature of this decree, or of the decision and tables filed herewith as a part hereof, by order or supplemental judgment or decree to be entered at the foot hereof. . . .

"At any time any party to this suit, or any canal company acting as the carrier of the water distributed, may apply to the court or the judge thereof for an interpretation, modification, enlargement, or annulment of any order, direction, or action of the commis-

sioner in the carrying out of the provisions of the decree. . . .

"The decision and decree in this case, from the nature thereof, is of necessity a continuing one. The court retains jurisdiction of the case and of the issues embraced therein. From time to time, as conditions may require, an enlargement or modification of the decision and decree, application for such modification or enlargement may be made to the court, and, if granted, the same shall be entered at the foot of the decree herein."

A few words concerning the circumstances that gave cause for the Kent decree we think not amiss. It was entered in the district court of Maricopa county March 1, 1910, in the case of *P. T. Hurley* v. *Chas. F. Abbott and 4,800 Other Persons,* the United States being an intervener. The United States had theretofore acquired title to the Roosevelt dam and reservoir site, and to most of the irrigating systems of the Salt River Valley, and was also interested, as guardian, in certain Indians who had settled in the Salt River Valley and were consumers of waters of the Salt and Verde Rivers. The other parties to the suit were or had been owners of land and appropriators of some of said waters. It was thought necessary, before the project was complete and ready to serve patrons, that those entitled to service should be ascertained. It was also necessary to ascertain the amount of water that had been theretofore appropriated for beneficial purposes in order to determine the water subject to storage. These things could be accomplished only by one big suit in the form of an action to quiet title of all the users and appropriators of the waters of said rivers; hence the Hurley-Abbott suit. This suit was pending and in course of trial for more than three years before the learned trial judge entered what is known as the Kent decree; "the testimony," as the court says, "being taken intermittently during a period of two and one-half years."

At the time of the entry of the decree the dam was not completed. The data before the court as to the service of water was based upon an insufficient supply during the irrigating season every year theretofore. The court was without any guide to inform him what effect an ample supply, which was expected from the reservoir for every year, would have upon the duty of water, but doubtless entertained the idea that it would be much increased. He also knew that the amount, extent, duration and priority of the use of water by the different parties to the suit, as found, was based largely upon the *ex parte* testimony of each of said parties. Moreover, the impounding, diversion and distribution of the waters to the various canals were made a function of the officers of the United States under the supervision of the court.

Thus a different system was to be inaugurated than theretofore prevailing with every reason to expect radically different results. This new system had not been tried out, and its effect, when applied, was problematical. The court therefore retained jurisdiction of the United States and its officers and all the other parties to the suit and the subject matter of the suit, with the power to interpret, modify, enlarge or annul "any order, direction or action of the commissioner in carrying out all the provisions of the decree," and also upon "good cause shown from time to time to modify, enlarge or abrogate any portion or feature of the decree or of this decision and tables filed herewith as a part hereof by order or supplemental judgment of decree to be entered at the foot hereof."

More than any other question, in a case bristling with intricate and vitally important questions, the question of the duty of water was found by the distinguished trial judge the most difficult to solve. He so stated, and also said the duty of water fixed by him was experimental. Listen to his words:

"The amount of water necessary for proper and economical irrigation and cultivation of a given amount of land is perhaps the most difficult of satisfactory solution of all the various questions arising in the case."

Again:

"Such a standard [forty-eight inches per quarter-section], while perhaps not permitting of a precise conformity with existing conditions, can for the present at least *experimentally* be tried, and hereafter *changed* as it may be found to be inadequate or too great. . . . I therefore fix upon and determine such to be the duty of water for the purposes of this case, subject, however, to an increase or decrease of such standard upon application to the court in this suit hereafter as conditions may require and develop *after due trial* of such amount as such standard." (Italics ours.)

That the court entering the Kent decree did not intend finally to fix the service of water at forty-eight inches per quarter-section is certain; that he did intend that this amount should be only tentatively fixed for the purpose of trying it out experimentally under the new conditions is likewise certain. We cannot ignore this intention so clearly expressed and hold that forty-eight inches of water, continuous flow or its equivalent, was finally awarded these plaintiffs for each quarter-section of their land. The Kent decree was entered in the form we find it without complaint or objection by the plaintiffs or any other of the litigants to the suit at the time or since. The Salt River Valley water service has been carried on under its provisions, and every day since it was entered the court has been open to any or all the parties thereto, and is now open, to have it modified, changed or altered, upon good cause shown. By the decree the plaintiffs and others in like situation doubtless have a perpetual water right in amount "necessary for proper and economical irrigation" of their land, but

the exact amount has not been finally fixed and settled by the Kent decree. In view of the acceptance of the decree by all parties, we must conclude they were satisfied with its terms and became thereby bound to apply to the court that entered it, in the manner therein provided, for any relief under its terms. In the new conditions and circumstances, this form of decree must have been thought by the court and litigants the best suited to attain the highest and best results to all those who own land and water rights under the Roosevelt project, as it would afford an opportunity to ascertain the greatest service that could be imposed upon the amount of water available for irrigation, and by actual experiment bring to light any improvident or inequitable provisions of the decree.

As to whether the experiment should demonstrate that forty-eight inches of water per quarter-section was too little or too much or the proper amount for economical irrigation and cultivation thereof, the court retained the power to say "upon application to the court in this suit hereafter as conditions may require and develop after due trial of such amount as such standard." The defendants as public carriers of water, were not given by the decree any power to decide upon the experiment. They were not authorized to say the experimental standard of forty-eight inches was the proper amount or too much or too little. The court only would pass upon that question, after due trial of the standard and upon application. This, of course, would involve the forming of issues, the submission of evidence, and a trial.

The rule is:

"The party applying for a writ of *mandamus* must show a clear, legal right to have the thing done which is asked for, and it must be the clear legal duty of the party sought to be coerced to do the thing he is called on to do." *People* v. *Butler,* 24 Colo. 401, 51 Pac. 510.

The excerpts quoted from the Kent decree show not only that plaintiffs have no clear, legal right to have done what is asked, but no legal duty upon defendants to do it.

It would be an anomaly in the administration of the law to permit a party claiming a right in an action over which the court retains jurisdiction, as in the Hurley-Abbott case, to seek the protection or enforcement of that right in a different and independent action. Why not apply for relief or protection in the pending action? What reason or excuse may be suggested to justify another and different action? If the right asserted has been fully ascertained and determined, the court, upon application, or, for that matter, upon its own motion, possesses the power to protect or enforce it and to that end it may make orders and punish for their disobedience. If the right asserted has not been finally ascertained and determined or is in doubt, the court possesses the power, in disputes and controversies, to do justice and equity between the parties. The remedy is simple and at hand.

In an application to the court for a confirmation or enforcement of the experimental standard or for a change of that standard, "as conditions may require and develop," all of the appropriators and users of water under the defendant canal company's canal should be served with notice and permitted to appear; for it is apparent that all such are vitally interested. On that important question all water users under the Tempe irrigating canal should have an opportunity to be heard, whether in support of or in opposition to the application. *Squire* v. *Livezy et al.,* 36 Colo. 302 85 Pac. 181.

It is clear that the learned trial judge was strongly of the opinion that the proper remedy for the plaintiffs was by way of a direct application to the court in the Hurley-Abbott case. He said:

"To such a decree the rule that the judgment of a court becomes final and not subject to a change or modification after the term at which it was rendered has no application. It is of necessity a continuing decree and subject to modification or enlargement or change at any time that proper showing may be made therefor. But the plaintiffs, or others in like situation, have at least twice made application to this court in the case of *Hurley* v. *Abbott* for the relief or similar relief to that sought in this action, and each time this court has denied the application on the ground that it had no jurisdiction to grant it because the judgment was not subject to modification after the term at which it was rendered."

The judge who used this language had been called in from another county to try the case, and, as a matter of course, followed the ruling of the local judge. The fault, if any, lies with the plaintiffs or others who had theretofore made application for relief under the decree, in failing to appeal from the ruling denying the application.

The judgment is reversed and the case is remanded, with directions to dismiss the plaintiffs' complaint.

BAKER, J., concurs.

CUNNINGHAM, C. J. (Dissenting.)—I concur in the order reversing the judgment, but I feel compelled to dissent from the order dismissing the action and thereby denying relief in the circumstances presented in this record.

The broad purpose of the action is one seeking relief in conformity with the Kent decree, as that decree was rendered and as it continues in force unmodified. The plaintiffs claim the right to use forty-eight inches of water to irrigate each quarter-section of land. They base their claim on actual use of the water for such purpose for more than forty years, and upon the unmodified Kent decree as evidence of that right both as to the right of use and the quantity they are au-

thorized to use. Resting upon such rights, the plaintiffs assert that the defendant canal company refuses to deliver the said amount of water aforesaid, the company admitting at the same time that said amount of water has been delivered to it by the water commissioner, and the grounds for such refusal are based solely upon the assertion that the rules, regulations and by-laws of the canal company control the quantity of water delivered to the shareholders' lands, and such rules, regulations and by-laws require the water carried to be prorated to the lands without regard to priority of use.

The inquiry presented is whether the plaintiffs have a clear legal right to have the water carried and delivered to their lands in conformity with the law and with the Kent decree as unmodified, or whether the plaintiffs, with other shareholders, have among themselves agreed to distribute the water otherwise, and by such agreement and long-continued practice waived all priority rights to use water carried by the canal company for the irrigation of their lands.

The inquiry is one of fact to be settled from the evidence on the subject, and, when settled, is conclusive of the matter. The case is one properly remedial by *mandamus,* if the facts establish a clear legal right in the plaintiffs.

Referring to the facts as established in the Kent decree, without quoting them, we are informed that when plaintiffs' oldest quarter-section of land was irrigated, and thereby reclaimed, fifty-nine shares of the defendant canal company were owned and held without land representing, and thus were known to the shareholders as "dead" shares, and such shares took no water service while they remained "dead." When plaintiffs' second quarter-section of land became so reclaimed, fifty shares in the association were "dead" shares.

The irrigation of plaintiffs' lands for forty-three and forty-five years by the use of water from the Salt River, carried by the defendant canal company, gave plaintiffs the right to the prior use of water in the amount adjudicated and determined by a solemn judgment of a court, viz., the Kent decree. The Kent decree became and is a muniment of title to the use of water of the Salt River 'for irrigating the lands to which such water is appurtenant. The said decree is evidence of that title, and it determined the relative prior rights of the individual shareholders of the canal company. The by-laws of the canal company have recognized the rights of the old lands to the first use of the water, and the officers managing the affairs and business of the company are commanded by the by-laws to furnish water to the shareholders as they are legally entitled to such water. The directors of the canal company and its other officers, in effect, have accepted the Kent decree as binding upon them in the matter of the amount of water specified in said decree as sufficient for use on the lands, viz., forty-eight inches, miner's measurement, for each quarter-section of land cultivated and served by the Tempe canal. The canal company having accepted the plan of the Kent decree, and at all times since having acted upon it, by such acceptance and action the company and its shareholders are estopped from refusing to carry out the terms of the decree as a rule, regulation or by-law of the association in so far as the decree effects the diversion and carriage of the water turned into the canal for the users. The defense of the canal company is therefore not supported by the facts.

The canal company's right to take water rests in its duty owing to its shareholders, and the duty is not performed by the canal company until it has delivered the water confided to its care by the court commissioner for the use of the shareholders as they are legally entitled to it. The water is measured to the

canal in strict accord with the rights of the appropri-
ators. The decree settled such rights both as to
order of service, which is final, and as to the amount
of water served, which is subject to change.

The canal company cannot be heard to dispute the
appropriator's right to prior use of water as fixed by
the Kent decree so long as the water is turned into
the canal on authority of such decree, nor can it dis-
pute the amount of water awarded the plaintiffs' lands
by that decree so long as it receives from the river
flow the amount of water specified in that decree as
applicable to plaintiffs' lands. The canal company
cannot receive forty-eight miner's inches of water for
each of plaintiffs' quarter-sections of land when the
flow of the river is sufficient in amount to turn that
amount into the ditch for plaintiffs' lands, and then,
after coming into the possession of such water for
that special purpose, by authority of the carrier's di-
rectors divert a portion of the water to some other
lands having a right subsequent and subordinate to
the lands for which the water was taken from the river
against the objection of the prior appropriator. If
such power is allowed to a carrier of water, exercised
through its shareholders, a prior appropriation of
water has no value to the appropriator, but is subject
to the wish of a majority of the directors of the carrier.
Such is not the law of water rights as those rights
have been settled by the decisions of the courts and
the legislature of the state. Hence the facts in evi-
dence point out a clear legal right to the amount of
water claimed.

Evidence in this case is overwhelmingly to the effect
that older lands have had first right to the use of water
in seasons of scarcity. No settled custom has existed
by which the prior right of old lands to the water has
been denied. The by-laws, rules and regulations of
the canal company point unerringly to the fact that
prior rights exist and have at all times, when ques-

tioned, been recognized by the canal company and by its shareholders—owners of lands irrigated by means of the defendant's canals.

With these facts in the case, I am of the opinion that the plaintiffs have shown a clear legal right to recover, and under the authority of *Gould* v. *Maricopa Canal Co.*, 8 Ariz. 429, 76 Pac. 598, they are entitled to a judgment coercing the defendant canal company to carry and deliver to their lands the amount of water decreed to that purpose in the said Kent decree so long as that decree remains operative, and so long as an amount of water sufficient for that purpose is delivered to the defendant at the point of diversion from the Salt River by authority of the Kent decree.

These reasons compel the conclusion that the judgment appealed from must be reversed, and at the same time the mandatory power of the court ought to be exercised in awarding to the plaintiffs the relief given them by the Kent decree and denied them by the defendant canal company. In the matter of the execution of the Kent decree, full faith and credit should be given that judgment so long as it remains unmodified.