This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**S&H DEVELOPMENT, LLC,**
**a New Mexico limited liability**
**company,**

Plaintiff-Appellant,

v.                                                                                          **NO. 34,647**

**CAIROL PARKER, individually and**
**d/b/a CAIROL CONSTRUCTION,**

Defendant-Appellee,

and

**JOHN M. ORTEGA, individually and**
**d/b/a SOUTHWEST HOME AND**
**COMMERCIAL REPAIRS,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

The Frith Firm
Gilbert Houston Frith
Trace L. Rabern
Santa Fe, NM

for Appellant

Sommer, Karnes & Associates, LLP

Karl H. Sommer
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**SUTIN, Judge.**

{1}     Plaintiff S&H Development, LLC contracted with Defendant John Ortega for construction services. Ortega unlawfully used Defendant Cairol Parker's general contractor's GB-98 license for the construction work. Ortega's work proved unsatisfactory to Plaintiff, and Plaintiff sought damages against both Ortega and Parker, an individual doing business as "Cairol Construction." The district court entered judgment on the pleadings against Ortega. Ortega did not appeal. The case against Parker was tried on Plaintiff's claims of negligence, negligence per se, and violation of the Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2009), together with a private right of action under the Construction Industries Licensing Act (the Act), NMSA 1978, §§ 60-13-1 to -59 (1967, as amended through 2013), based on aiding and abetting, conspiracy theories, and a prima facie tort claim. The district court held in favor of Parker on Plaintiff's liability claims. We hold that the district court did not err in that regard. The court also awarded Parker attorney fees after determining that Plaintiff's UPA claim was groundless and frivolous. We hold that the district court erred in that regard.

2

**BACKGROUND**

**{2}** Parker permitted Ortega, an unlicensed contractor, to use Parker's GB-98 general building contractor's license to pull a commercial remodel permit for construction work for Plaintiff. "License No. 09129" was shown on an unrelated bid previously submitted by Ortega under the business name "Southwest Home and Commercial Improvements." Parker knew that his license was being used by Ortega for the construction project.

**{3}** Plaintiff sued Ortega and Parker alleging various tort, contract, and statutory claims. Ortega did not defend, and the district court entered judgment against Ortega on the pleadings. Plaintiff's claims against Parker were tried, and Plaintiff tendered ninety-six requested findings of fact and sixty-five conclusions of law. Among the requested conclusions of law as to Parker's liability were the following:

> 97. Mr. Ortega and Mr. Parker were intending to evade the provisions of the . . . Act to allow Mr. Ortega to appear and act as the licensed general contractor when he was not.

> . . . .

> 110. Mr. Parker knew Mr. Ortega lacked the type of contractors' license required for this job, knew Mr. Ortega could not get the job and permit without it, and knowing these things loaned his license "to help" Mr. Ortega get the job and permit. This is aiding and abetting contracting without a license.

> 111. Mr. Parker and Mr. Ortega combined to agree that Mr. Ortega could use Mr. Parker's license to get a job and permit that they knew Mr.

3

Ortega could not get without it. This is civil conspiracy to commit contracting without a license.

112. Mr. Parker necessarily knew a permit bearing his name as general contractor was false, yet he agreed to lend his license to Mr. Ortega knowing and intending that Mr. Ortega would use it to get a permit that was false.

113. Mr. Parker could reasonably foresee his license would be used to obtain a job and permit falsely stating he was the general contractor, because that is what he intended to happen to "help out" Mr. Ortega.

114. Licensed contractors directly owe a duty to exercise reasonable care to avoid aiding contracting without a license.

. . . .

123. There is no principled reason why the scope of a licensed contractor's duties to third parties should differ from that when hiring an unlicensed contractor when a licensed contractor agrees to allow the unlicensed contractor to stand in the shoes of the general contractor.

124. Mr. Parker breached his duty of care to consumers of construction services.

125. Mr. Parker owed Plaintiff a direct duty of care, a statutory duty of care, including licensure, and due care when he used and permitted his licensure to be misuse[d], and violated both the terms and the strong policy . . . of the statutory scheme, and never attempted to fix what went wrong.

126. Mr. Parker is liable based on his undisputed aiding and abetting of Mr. Ortega in violating that part of the . . . Act that makes it a crime to act as a contractor without a license. . . .

127. The elements of aiding and abetting are established by [Mr.] Parker's undisputed testimony in trial. He knew that Mr. Ortega did not have the appropriate license for a commercial job, knew the license

4

would be used to pull a permit that falsely listed Mr. Parker as the general contractor, and gave him use of his license, specifically for the purposes of helping Mr. Ortega get the job, and get the permit.

128. Mr. Parker intentionally and knowingly loaned [Mr.] Ortega his license to use fraudulently on a commercial building permit.

129. Mr. Parker aided and abetted tortious conduct for knowingly helping Mr. Ortega to violate the following provisions [of Section 60-13-23 of the Act]:

> B. knowingly contracting or performing a service beyond the scope of the license;
>
> . . .
>
> H. willful or fraudulent commission of any act by the licensee as a contractor in consequence of which another is substantially injured, as determined by a court of competent jurisdiction;
>
> . . .
>
> K. acting in the capacity of a licensee under any other name than is set forth upon the license.

. . . .

131. Plaintiffs have shown the four elements of negligence *per se* are more likely than not.

132. There is a statute which exactly proscribes Mr. Parker's admitted unlawful actions. Section 60-13-23(J) . . . . Mr. Parker has admitted that he violated this statute. Plaintiff is the owner of the [p]roperty that he had contracted for extensive [i]mprovements, and clearly is in the class of persons the statute was intended to protect. The purpose of the . . . Act is primarily to protect consumers of construction services from unlicensed and unsatisfactory work. NMSA 1978, § 60-13-1.1. Another

5

purpose of the . . . Act is to make it possible for consumers to tell responsible, able, licensed contractors from unlicensed contractors[.] *Mascarenas v. Jaramillo*, [1991-NMSC-014, ¶¶ 13-14, 111 N.M. 410, 806 P.2d 59].

133.  The injury to Plaintiff is exactly of the type the [L]egislature sought to prevent.

134.  Mr. Parker combined to or aided and abetted a fraudulent misrepresentation and a fraudulent scheme for Mr. Ortega to get the job with Plaintiff under a falsehood.

{4}  Following the trial of Plaintiff's claims against Parker, the district court entered eighty-one findings of fact. Among the district court's findings are the following:

75.  [Plaintiff] offered no evidence establishing that anything that Parker did or failed to do was the proximate cause of the claimed damages.

76.  [Plaintiff] offered no evidence establishing the amount of money [Plaintiff] paid to correct or redo any of the work undertaken by Ortega.

77.  [Plaintiff] offered no evidence establishing the amount of money [Plaintiff] paid a third party for work that was not completed by Ortega.

78.  There is no evidence in the record for the [c]ourt to be able to distinguish between amounts paid to correct Ortega's work and amounts paid to complete the work Ortega contracted to complete.

79.  [Plaintiff] offered no evidence establishing that Parker had any intent to injure [Plaintiff].

And the court entered conclusions of law reciting:

C.  [Plaintiff's] claims [of negligence and negligence per se] against Parker should be dismissed as [Plaintiff] failed to establish that

6

any act or omission by Parker was the proximate cause of the alleged harm suffered by [Plaintiff].

D. [Plaintiff's] claims [of negligence and negligence per se] against Parker should be dismissed as Plaintiff failed to establish the costs and damages resulting from work that was incorrectly performed by Ortega.

E. There is no private right of action under the . . . Act . . . and [Plaintiff's] claim [of violation of the Act] should be dismissed.

F. [Plaintiff] failed to meet its burden to establish the elements of a [p]rima [facie] [t]ort for [c]onspiracy and [c]ollusion to [d]efraud [Plaintiff] and [v]iolate the [UPA], and [those claims] should be dismissed[.]

. . . .

J. [Plaintiff] failed to establish it is entitled to damages under the provisions of the [UPA.][1]

Based on its findings of fact and conclusions of law, the district court entered judgment dismissing Plaintiff's claims against Parker with prejudice.

{5} On appeal, Plaintiff does not specifically attack as unsupported by evidence any of the district court's findings of fact in regard to proximate cause, money and amounts paid, intent to injure, and damages, and does not set out in what manner those findings were not supported by substantial evidence. Those findings of fact are therefore deemed to be conclusive. *See* Rule 12-318(A)(4) NMRA (requiring an

---

[1] Section 57-12-10(B) of the UPA creates a private right to recover actual damages.

7

appellant to "set forth a specific attack on any finding, or the finding shall be conclusive" and that "[a] contention that a . . . judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence"). "Unless clearly erroneous or deficient, findings of the trial court will be construed so as to uphold a judgment rather than to reverse it." *Herrera v. Roman Catholic Church*, 1991-NMCA-089, ¶ 14, 112 N.M. 717, 819 P.2d 264. "[A]n appellant is bound by the findings of fact made below unless the appellant properly attacks the findings, and . . . the appellant remains bound if he or she fails to properly set forth all the evidence bearing upon the findings." *Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 18, 115 N.M. 181, 848 P.2d 1108. An unchallenged finding of fact is binding on appeal. *See Stueber v. Pickard*, 1991-NMSC-082, ¶ 9, 112 N.M. 489, 816 P.2d 1111.

{6}      Nor does Plaintiff show how the findings do not support the court's conclusions of law relating to negligence and negligence per se and prima facie tort. Those conclusions of law stand in support of the court's judgment. In reviewing conclusions of law, we ascertain "whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the

8

contrary." *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 1991-NMSC-097, ¶ 8, 113 N.M. 9, 820 P.2d 1323.

{7}     Plaintiff's issues on appeal are more limited than those asserted in its complaint and requested findings and conclusions. Plaintiff's points broadly combine to assert that it had a right to sue Parker because Parker helped Ortega violate the Act's licensure rules, its negligence per se claim against Parker was a viable claim given Parker's breach of a clear duty under the Act, and Parker's knowing participation in the wrongful conduct subjected Parker to joint and several liability under theories of aiding and abetting, as well as conspiracy. Plaintiff also asserts that the district court erred in awarding Parker attorney fees. We first address the tort liability issues, followed by the attorney fee issues.

**DISCUSSION**

**I.     The Tort Liability Issues**

{8}     We see a need at the outset to clarify Plaintiff's unclear arguments on appeal about its assertions of joint and several liability based on independent torts of aiding and abetting, collusion, and perhaps conspiracy. These theories of tort liability were not pleaded in Plaintiff's complaint as independent tort claims, nor were they expressed as independent tort claims in Plaintiff's requested findings of fact and conclusions of law. Plaintiff has not shown that it preserved tort theories of recovery

9

separate from Plaintiff's claim of violation of the Act. Such tortious conduct is mentioned in Section 60-13-23(J) of the Act, which prohibits a licensee from "aiding, abetting, combining or conspiring with a person to evade or violate" the Act, and is alleged as constituting actions contributing to a violation of the Act. However, Plaintiff offers no persuasive argument or authority supporting contentions of a private right of action under the Act based on theories of conspiracy, collusion, aiding and abetting, misrepresentation, or fraud.

{9} No New Mexico case supports such a right here. The test for establishing an implied private right of action based on wording in a statute and legislative intent was not satisfied under the circumstances. *See Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, ¶ 31, 346 P.3d 1136 (stating the test to determine whether to imply a private cause of action). The *Yedidag* test, taken from *Cort v. Ash*, 422 U.S. 66, 78 (1975) (known as the *Cort* factors), are:

> (1) Was the statute enacted for the special benefit of a class of which the plaintiff is a member? (2) Is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy? and (3) Would a private remedy either frustrate or assist the underlying purpose of the legislative scheme?

*Yedidag*, 2015-NMSC-012, ¶ 31 (alteration, internal quotation marks, and citation omitted). There exists no explicit or implicit legislative intent to create a private remedy under the circumstances here. Nor would providing a private remedy to

10

Plaintiff under the circumstances assist the underlying purpose of or public policy underlying the Act. Plaintiff attempts to persuade us otherwise, relying on the results in *Yedidag* and in *National Trust for Historic Preservation v. City of Albuquerque*, 1994-NMCA-057, 117 N.M. 590, 874 P.2d 798, in which private rights of action were implied. *Yedidag*, 2015-NMSC-012, ¶¶ 42-43; *Nat'l Trust*, 1994-NMCA-057, ¶¶ 14-15. These cases involve peculiar circumstances considerably different from the circumstances here. *See Yedidag*, 2015-NMSC-012, ¶ 43 (allowing a private action for breach of confidentiality provisions in the New Mexico Review Organization Immunity Act causing the plaintiff's damages); *Nat'l Trust*, 1994-NMCA-057, ¶ 12 (allowing a private right of action by displacing the *Cort* factors, looking beyond legislative intent, and addressing a public agency's failure to comply with state law).

**{10}** We do not conclude that *Yedidag* or *National Trust* are analogous, and we are not persuaded that the circumstances in the present case are fit for establishing in Plaintiff a private right of action against Parker under the Act. While an ultimate purpose of the Act is to protect the public from unqualified contractors, *see* § 60-13-1.1, the Act appropriately and adequately provides measures that civilly and criminally punish violators. *See* §§ 60-13-23, -30, -52. We see no legislative intent to afford relief beyond those measures under the circumstances in this case. We hold that there exists no basis on which to imply a private right of action under the Act here. In

11

sum, on the liability issues, we hold that the district court did not err in dismissing Plaintiff's claims against Parker with prejudice.

**II.    The Attorney Fee Issues**

{11}    Parker moved for attorney fees under Section 57-12-10(C) of the UPA which, in pertinent part, states that "[t]he court shall award attorney fees and costs to the party charged with an unfair or deceptive trade practice or an unconscionable trade practice if it finds that the party complaining of such trade practice brought an action that was groundless." After considering the issue, the court sent a letter to the parties setting out Plaintiff's proposed conclusions of law that pertained to the UPA. The proposed conclusions of law stated that Ortega and Parker violated the UPA-imposed duty to disclose material facts necessary to prevent any statements from being misleading, that Ortega and Parker acted in violation of the Act through their material misrepresentations, and that Ortega and Parker were liable for treble and additional damages as well as attorney fees under the UPA. The court stated that Plaintiff's attempted defense against Parker's claim for attorney fees, namely, that it had abandoned its UPA claim prior to trial, was disingenuous, given that Plaintiff claimed a UPA violation and damages in its requested findings of fact and conclusions of law.

{12}    The district court quoted parts of *Chavarria v. Fleetwood Retail Corp. of New Mexico*, 2005-NMCA-082, ¶ 43, 137 N.M. 783, 115 P.3d 799, *aff'd in part, rev'd in*

12

*part on other grounds*, 2006-NMSC-046, 140 N.M. 478, 143 P.3d 717, in relation to the requirement that a determination must be made about the amount of time spent on each separate claim in determining fees under the UPA. The court's letter went on to state:

> All claims against . . . Parker arose out of the same operative facts. . . . Parker's defense against any one of the claims against him necessarily was applicable and necessary to the defense of all other claims. It is impossible to therefore separate the proof required to defend against any one claim. In addition, . . . Plaintiff's counsel brought a claim against . . . Parker which they had successfully defended against the case of *Kreischer v. Armijo*, 1994-NMCA-118, 118 N.M. 671, 884 P.2d 827, wherein the Court of Appeals was clear that such claim did not exist in New Mexico. Further, in the prosecution of . . . Plaintiff's claim they never acknowledged this case, but argued the same public policy argument that the Court of Appeals had specifically rejected in the case. The bringing of this claim and the failure to acknowledge that the claim was contrary to existing law was bad faith. Such actions cannot be encouraged or rewarded.

The court closed its letter determining the fees requested by Parker to be reasonable and that Parker should be awarded $22,214.13 "in the circumstances of this case."

{13} Shortly afterward, the district court entered an order granting Parker's motion for attorney fees and costs and amending the court's earlier final judgment to include this award of fees and costs. The court found that "[t]he UPA claim was groundless as that term is [used] in Section 57-12-10(C) of the Act." And the court made the following further findings:

13

4.  Plaintiff and his counsel knew before filing the instant lawsuit that there was no factual basis to support the UPA claim, and with this knowledge filed the claim anyway.

5.  Plaintiff's counsel, The Frith Firm, brought a claim against . . . Parker, namely [an u]nlicensed [c]ontractor [c]laim, which The Frith Firm had successfully defended against in the case of *Kreischer* . . . , wherein the Court of Appeals was clear that such claim did not exist in New Mexico.

6.  Further, in the prosecution of the [u]nlicensed [c]ontractor [c]laim[,] The Frith Firm never acknowledged the *Kreischer* case, but argued the same public policy argument that the Court of Appeals had specifically rejected in the case. The bringing of this claim and the failure to acknowledge that the claim was contrary to existing law was bad faith.

7.  Such actions cannot be encouraged or rewarded.

8.  . . . Parker has demonstrated that it is difficult or impossible to segregate the legal work in defending the UPA claim from Plaintiff's other claims.

9.  The hourly rates and amounts charged by . . . Parker's counsel were reasonable and that . . . Parker should be awarded the sum of [$22,214.13].

{14} Plaintiff complains on appeal that the "court erred in its fee-shifting ruling" because "*Kreischer* does not hold that this UPA claim against the licensed contractor is groundless[,]" and "[t]o the contrary, it held that the UPA claim against the licensed contractor should not have been dismissed." The parties argue about *Kreischer*'s application because, in determining that the UPA claim against Parker was groundless,

14

the district court relied on *Kreischer* and the Frith Firm's representation of the defendant in *Kreischer* in determining that the claim against Parker was groundless.

**{15}** In *Kreischer*, an unlicensed corporation contracted with the plaintiff for construction work. 1994-NMCA-118, ¶ 2. When the corporation failed to complete the construction, the plaintiff sued the individual (the defendant) with whom the plaintiff dealt with in the contracting process. *Id.* ¶ 3. The defendant was the sole owner of the unlicensed corporation, was its president, and was acting as agent for the corporation. *Id.* ¶ 2. As stated in *Kreischer*, the "[d]efendant possessed a contractor's license in his own name only; the [c]orporation itself did not possess such a license." *Id.* The district court granted the defendant's motion for summary judgment. *Id.* ¶ 3. The plaintiff appealed. *Id.* ¶¶ 1, 3.

**{16}** The Court in *Kreischer* first detoured to an issue of whether the plaintiff's claims of gross negligence and negligence per se sounded in contract rather than tort, making any duty owed to the plaintiff to be one imposed by the contract and not by law. *Id.* ¶¶ 6-7. After characterizing these claims as sounding in contract and not tort, *id.* ¶¶ 3, 6-7, the district court characterized a remaining claim as one that could be "viewed in a slightly different light[,]" that is, a claim that "came very close to alleging a valid non-contractual cause of action against [the d]efendant, as an agent of the [c]orporation, based on the [UPA]," and that "[t]he language [in this claim]

15

alleged certain facts that, if proven, could support a cause of action for unfair and deceptive trade practice against [the d]efendant, not the [c]orporation." *Id.* ¶ 8. And the Court "recognize[d] that these allegations might support a claim that is separately actionable against [the d]efendant." *Id.* ¶ 9.

{17} That said, however, the Court in *Kreischer* determined that it would only address the plaintiff's contract claim, reasoning that the plaintiff had failed to address the unfair practices issue in his brief in chief and that "with proper allegations and the necessary argument made first to the trial court and then to [the Court of Appeals], [the p]laintiff could have brought a separate cause of action under the UPA against [the d]efendant individually," but the plaintiff failed to bring that separate cause of action. *Id.* ¶ 10.

{18} The Court in *Kreischer* then characterized "the issue as argued by the parties" to be "more precisely stated" and rephrased as follows: "whether the . . . Act . . . allows a cause of action based on breach of contract against the individual owner of the construction license who was not a party to the contract but was acting as the agent of a corporation that was a party to the contract but did not possess a license." *Id.* ¶ 12. Under the contract issue, the Court then addressed whether "the public policy of requiring contractors to possess a valid license mandates imposition of liability on the party who possesses the license." *Id.* ¶ 13. The Court decided that, in spite of the

16

"strong public policy of requiring contractors to possess a license," *id*., "nothing in the Act imposes *civil* liability" on an agent "who enters into a contract on behalf of a disclosed principal that is unlicensed[,]" even though the agent "is subject to criminal liability[.]" *Id*. ¶ 15.

{19}     In arguing that its claim against Parker relating to the UPA was not groundless, Plaintiff asserts that the claim was based on Parker's own conduct that was actionable under the UPA and that "the language of the UPA encompasses 'a broad array of commercial relationships' and does not require a direct transaction between a plaintiff and a defendant." *See Maese v. Garrett*, 2014-NMCA-072, ¶ 19, 329 P.3d 713 (stating that the UPA applied even though the defendants were not specifically compensated in connection with a claimed misrepresentation made by the defendants, where the defendants' claimed misrepresentation "occurred in connection with the [broader] commercial relationship for which [the d]efendants were compensated"); *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 21, 142 N.M. 437, 166 P.3d 1091 (stating that "[t]he conjunctive phrase [in the UPA] 'in connection with' seems designed to encompass a broad array of commercial relationships" and that "[o]n its face, this language does not suggest that a direct representation, by the defendant to the plaintiff, is a prerequisite" to stating a UPA claim). Further, Plaintiff states that "[t]he UPA itself provides a private cause of action for violation of any of a myriad

of state regulations of practices in the trades (. . . and there is no law suggesting it does not apply to [the Act] regulation violations)." *See Parker v. E.I. DuPont de Nemours & Co.*, 1995-NMCA-086, ¶ 47, 121 N.M. 120, 909 P.2d 1 (stating that "[g]enerally, the [UPA] is intended to provide a private remedy for individuals who suffer pecuniary harm for conduct involving either misleading identification of a business or goods, or false or deceptive advertising"). Further, Plaintiff argues,

> [It] can appreciate that the district court did not find in [its] favor on the aid-and-abet an[d] UPA claim[s] as to Parker, that is not the same as saying that the claim itself was groundless. Clearly, unlicensed contractors getting work by pretending they have "permission" to use another's license is a classic unfair practice.

*See Romero v. Parker*, 2009-NMCA-047, ¶ 27, 146 N.M. 116, 207 P.3d 350 (concluding that "the [Act] bars both an unlicensed subcontractor from recovering compensation from a general contractor and a general contractor who did not act responsibly in hiring an unlicensed subcontractor from recovering compensation already paid to the unlicensed subcontractor").

{20}     According to Parker, Plaintiff "misses the point with respect to the [d]istrict [c]ourt's citation to *Kreischer*[.]" In Parker's view, Plaintiff "was attempting to impose liability as a matter of public policy under [the Act] on a licensed contractor for work done by an unlicensed contractor[,]" and in *Kreischer*, the Frith Firm, which represented the defendant in *Kreischer* and Plaintiff in the present case, "successfully

defended a licensed contractor against the same public policy claim under [the Act]." Parker points also to the statement in *Kreischer*, 1994-NMCA-118, ¶ 13, that "[a]lthough we agree that New Mexico has a strong public policy of requiring contractors to possess a license, the cases on which [the p]laintiff relies do not indicate that the appropriate remedy is to place liability on an individual or entity who was not a party to the contract." (Citations omitted.) Thus, Parker contends, "[t]he Frith Firm was well aware that its suit attempting to impose liability under [the Act] against Parker on public policy grounds had been rejected by the Court of Appeals[,]" and "the [d]istrict [c]ourt's citation to *Kreischer* merely highlighted that it was frivolous and groundless to attempt to impose liability on Parker under [the Act], and that the Frith [Firm] was aware of that fact."

{21}     *Kreischer* held that:

> [T]he Act does not alter the general rule that an agent is not liable on a contract the agent enters into on behalf of a disclosed principal, even where the principal does not possess a contractor's license and the agent does. Therefore, under the facts of this case, where the complaint essentially alleged breach of the construction contract, we conclude that the trial court did not err in dismissing the complaint.

*Id.* ¶ 16. The decisive issue in *Kreischer* was not whether a plaintiff could successfully pursue a UPA claim directly against a licensed individual who acted as an agent of an unlicensed corporation. Instead, the decisive issue in *Kreischer* was whether the public policy behind the Act created a basis for contract liability under a breach of contract

19

claim when the licensed individual owner of the unlicensed contracting company violated the Act. *See id.* ¶ 12 (stating the issue before the Court).

{22}    We hold that the district court erred in its determination that Plaintiff's claim was groundless, allowing an award of attorney fees. Plaintiff here did not attempt, as the plaintiff did in *Kreischer*, to establish a breach of contract claim based on Parker's violation of the Act and the public policy underlying the Act. Plaintiff attempted to establish a claim under the UPA based on Parker's conduct in violation of the Act and the public policy underlying the Act. Because the actual issue and holding in *Kreischer* was based on a breach of contract claim and not on a UPA-based claim, the UPA-based claim here is not inconsistent with counsel's client's positions in *Kreischer*. The district court in the present case therefore erred in its determination that counsel's conduct in asserting a UPA-based claim was inappropriate.

**CONCLUSION**

{23}    We affirm the district court's dismissal of Plaintiff's liability claims. As to the attorney fee issue, we hold that Parker misconstrues and the district court misconstrued *Kreischer* and Plaintiff's arguments. Further, we hold that Plaintiff's UPA claim was not groundless under Section 57-12-10(C). The district court therefore erred in awarding attorney fees. We reverse the district court's award of attorney fees.

{24}    **IT IS SO ORDERED.**

20

                                _____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**MICHAEL E. VIGIL, Judge**