816 P.2d 1111

**Robert F. STUEBER and James M. Stueber, Plaintiffs–Appellees,**

v.

**H. Griffin PICKARD, Defendant–Appellant.**

**No. 19120.**

Supreme Court of New Mexico.

Aug. 28, 1991.

Calvin Hyer, Jr., Albuquerque, for defendant-appellant.

Kim E. Kaufman, William F. Aldridge, Albuquerque, for plaintiffs-appellees.

## OPINION

SOSA, Chief Justice

H. Griffin Pickard, Jr. (Pickard) appeals judgment in favor of Robert and James Stueber (the Stuebers). The Stuebers are brothers who inherited a house from their parents. They sold the house for approximately $55,000 to a corporation that was never registered with the Corporation Commission, Pickard Builders, Inc. (the corporation). They dealt with H. Griffin Pickard in negotiating the sale. By two promissory notes, the corporation was to pay the Stuebers $680 per month from its interest in a mortgage it held on another house. It was agreed that the other house was collateral for the loan obligation, but, apparently, as we explain more fully below, the Stuebers' lien interest was never recorded. Payments were made for two years until the collateral house was sold.

The Stuebers believed that the corporation recorded their security interest in the collateral house, but evidently this was not done. We say "evidently" because no one knows on appeal and the record does not reflect whether the Stuebers actually held a recorded mortgage interest in the collateral house. As the case progressed, however, the issue came to be not what actually happened with respect to the Stuebers' secured interest in the collateral house, but what the Stuebers believed happened. The Stuebers believed that Pickard defrauded them by selling the collateral house in such a way as to destroy what they believed was their recorded interest. From the record it appears that in fact there never had been a mortgage recorded on the collateral house showing the Stuebers as lien holders of record with a secured interest in the house.

Nevertheless, the Stuebers threatened to sue Pickard for fraud if he did not make good on the obligation to pay the notes. The Stuebers and Pickard met several times and negotiated a settlement. In December, 1983, several documents were prepared by the Stuebers' attorney: (1) an assignment and bill of sale from Pickard to the Stuebers of a percentage interest which Pickard owned in a real estate joint venture; (2) a warranty of title specifying that Pickard in fact was possessed of this interest; (3) a repurchase agreement in which it was agreed that the Stuebers would receive all distributions attributable to Pickard's interest in the joint venture until January 1, 1989, at which time Pickard would buy back his interest for $55,000 less any distributions the Pickards had received; (4) a consent to Pickard's transfer and waiver signed by his co-joint venturers; and (5) a release of liability signed by the Stuebers in which they excepted Pickard's obligation under the repurchase agreement.

Documents 1 and 4 were executed in December, 1983. Documents 2, 3 and 5 were not executed until May, 1984, owing to Pickard's difficulty in getting all the joint venturers to sign document 4. The Stuebers never received any distribution from the joint venture, and Pickard never made any payment to them under the repurchase agreement. The Stuebers sued to collect under the repurchase agreement and were awarded judgment against Pickard.

On appeal, Pickard alleges that the Stuebers' supposed claim of fraud was invalid,

as there never had been any mortgage recorded for him to tamper with, and thus their forbearance from suing amounted to a lack of consideration necessary to support the assignment and bill of sale. Further, he alleges that the repurchase agreement was a second and separate contract unsupported by consideration. He also contends that because the joint venture was an interest in real estate, the lack of his wife's signature on the assignment and bill of sale prevented the passing of a community property interest in real property to the Stuebers.

We reject Pickard's contentions, along with other minor contentions he raises, and affirm the judgment in its entirety. We remand the case to the trial court to set attorney fees for the Stuebers' prosecution of this appeal. Appellate attorney fees will be in addition to the attorney fees already awarded by the trial court.

■ First, there is substantial support in the record to support the trial court's finding that the Stuebers' forbearance to sue constituted the consideration for the assignment and bill of sale. *See* 1.W. Jaeger, *Williston on Contracts* § 135B at 581 (3rd ed. 1957) ("forbearance from suit on a claim of doubtful validity is sufficient consideration for a promise if there is a sincere belief in the validity of the claim"); 1. A. Corbin, *Corbin on Contracts* § 139 (1963) (reasonable basis for belief); J. Calamari and J. Perillo, *The Law of Contracts* § 4–8 (1987) (same).

While the trial court did not explicitly find that the Stuebers' forbearance was based on a good faith belief in the validity of their claim, the court did find that their testimony was "extremely credible" and that Pickard's was "extremely incredible." And since the Stuebers' testimony was to the effect that they believed they were entitled to sue Pickard for fraud, it follows that their belief was held in good faith.

■ Second, the repurchase agreement was not a separate contract. It was a separate document that was part of the same agreement underlying the assignment and bill of sale and prepared and executed as part of that agreement, and thus was supported by the same consideration—namely, the Stuebers' forbearance from suit. *See, e.g., Master Builders, Inc. v. Cabbell,* 95 N.M. 371, 622 P.2d 276 (Ct. App.) (issue of whether two documents constitute one contract is determined by considering parties' intent and surrounding circumstances), *cert. denied,* 95 N.M. 426, 622 P.2d 1046 (1981). At any rate, Pickard does not challenge the court's finding that the two documents were part of the same transaction. Thus, the court's finding on this issue is binding on appeal. *Cordova v. Broadbent,* 107 N.M. 215, 755 P.2d 59 (1988).

■ Third, the trial court was right to find that Mrs. Pickard's signature was not needed to transfer Pickard's interest in the joint venture. Such transfer was not a transfer of an interest in community-held real property. *See* NMSA 1978, § 40–3–13 (Repl.Pamp.1989) (both spouses must join in conveyance of community real property); *cf. Execu–Systems, Inc. v. Corlis,* 95 N.M. 145, 619 P.2d 821 (1980) (real estate listing agreement not a conveyance). In the last analysis, this case is a suit on a promise to pay money by an individual, Pickard, that was breached by that individual. It has nothing to do with the conveyance of real property.

Summary judgment is affirmed and the case is remanded with instructions for the trial court to set attorney fees for the Stuebers' prosecution of this appeal. Appellate attorney fees shall be in addition to attorney fees already set by the court.

IT IS SO ORDERED.

RANSOM and BACA, JJ., concur.