The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 2, 2025

**NO. S-1-SC-40182**

**STATE OF NEW MEXICO ex rel. OFFICE OF THE STATE ENGINEER; NEW MEXICO INTERSTATE STREAM COMMISSION; PECOS VALLEY ARTESIAN CONSERVANCY DISTRICT; CARLSBAD IRRIGATION DISTRICT; OTIS MUTUAL DOMESTIC WATER CONSUMERS & SEWAGE WORK ASSOCIATION; FORT SUMNER IRRIGATION DISTRICT; CITY OF ROSWELL; EOG; AND "YATES ENTITIES,"**

Plaintiffs-Respondents,

v.

**INTREPID POTASH, INC. and INTREPID POTASH-NEW MEXICO, LLC,**

Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**James J. Wechsler, District Court Judge, Pro Tempore**

Peifer, Hanson, Mullins & Baker, P.A.
Charles R. Peifer
Matthew E. Jackson
Abigail L. Pace
Albuquerque, NM

Law & Resource Planning Associates P.C.
Charles T. DuMars
Tanya L. Scott
Lacy A. Daniel
Albuquerque, NM

for Petitioners

New Mexico Office of the State Engineer
A. Nathaniel Chakeres, General Counsel
Lara Katz, Deputy General Counsel
Kelly Brooks Smith, Deputy General Counsel
Paul D. Bossert, Special Assistant Attorney General
Patricia Estrella, Special Assistant Attorney General
Santa Fe, NM

New Mexico Interstate Stream Commission
Christopher Shaw
Nicholas Rossi
Santa Fe, NM

Stein & Brockman, P.A.
Jay F. Stein
Santa Fe, NM

for Respondents New Mexico Office of the State Engineer and New Mexico Interstate Stream Commission

Hennighausen, Olsen & McCrea LLP
A.J. Olsen
Robert J. McCrea
Roswell, NM

The Standish Law Firm LLC
Olivia R.M. Sandish
Tucumcari, NM

for Respondent Pecos Valley Artesian Conservancy District

Martin, Dugan and Martin
Kenneth D. Dugan
W.T. Martin, Jr.
Carlsbad, NM

for Respondents Carlsbad Irrigation District and OTIS Mutual Domestic Water Consumers and Sewage Work Association

Utton & Kery PA
John Utton
Santa Fe, NM

for Respondent Sumner Irrigation District

Hinkle Shanor LLP
Lucas Williams
Drew Cloutier
Roswell, NM

for Respondents City of Roswell and Yates Petroleum Entities

Navajo Nation Department of Justice Water Rights Unit
Dwight Witherspoon
MacArthur L. Stant, II
Window Rock, AZ

for Amicus Curiae

**OPINION**

**BACON, Justice.**

**I.     INTRODUCTION**

{1}     Beneficial use of water is a constitutional cornerstone of water law in New Mexico. Article 16, Section 3 of the New Mexico Constitution provides "[b]eneficial use shall be the basis, the measure and the limit of the right to use water." Because "the water of any natural stream, perennial or torrential, not appropriated prior to statehood belongs to the public and is subject to appropriation for beneficial use," a water right is not the right to own water, but to use it beneficially. Bridgette Buynak & Adrian Oglesby, *Basic Water Law Concepts*, Water Matters!, The Utton Center, University of New Mexico School of Law (2015), at 1-4 (citing N.M. Const. art. XVI, § 2).

{2}     Pursuant to this constitutional mandate, a water rights holder must beneficially use the water or be subject to revocation through abandonment or forfeiture of the right. *See State ex rel. Reynolds v. Mears*, 1974-NMSC-070, ¶ 15, 86 N.M. 510, 525 P.2d 870 (recognizing the coexistence of the doctrines of forfeiture and abandonment); *State ex. rel. Reynolds v. South Springs Co.*, 1969-NMSC-023, ¶¶ 3, 22, 80 N.M. 144, 452 P.2d 478 (*South Springs*) (determining whether a party's water rights had been "forfeited or abandoned by nonuse"). In this case, the Court is asked

to determine whether Petitioners have abandoned their water rights. The matter arises from an extensive and convoluted history of water rights claimed by Petitioners Intrepid Potash, Inc., Intrepid Potash-New Mexico, LLC, and its predecessors in interest (Intrepid)[1] and challenged by Respondents Office of the State Engineer (OSE), et al. (Respondents).[2] Despite the factual complexity of the case, the primary issue before the Court is a relatively narrow one: whether the district court and Court of Appeals erred in concluding Intrepid abandoned all but 150 acre-feet per year (afy) of its water rights in the Pecos River. As discussed herein, the answer is no, and thus we affirm the Court of Appeals.

## II. BACKGROUND

### A. Historical Events Related to Intrepid's Claim

{3}     As early as 1883, the OSE issued Intrepid licenses for consumptive and non-consumptive water rights in the Pecos River. However, Intrepid accumulated the

---

[1]The water rights at issue were variously owned by six entities: United States Potash Company (USP); United States Borax & Chemical Corporation (USB); Continental American Royalty Company (CARCO); Teledyne Potash, Inc.; Mississippi Chemical Corporation (MCC); and, most recently, Intrepid Potash, Inc.

[2]Respondents include the Office of the State Engineer, New Mexico Interstate Stream Commission, Pecos Valley Artesian Conservancy District, Carlsbad Irrigation District (CID), Otis Mutual Domestic Water Consumers (Otis) and Sewage Works Association, Fort Sumner Irrigation District, City of Roswell, EOG, and Yates Entities. We note Otis and CID filed an answer brief separately from the other Respondents.

vast majority of its water rights in the early 1930s in conjunction with its construction of a potash refinery in Loving, New Mexico, which was completed in 1932. As part of that operation, they applied for and were granted rights to 34,315.374 afy of nonconsumptive water and an additional 19,836 afy of consumptive water from the Pecos River. These rights were to be diverted from Harroun Dam for industrial use at the Loving Refinery. The water was beneficially used for cooling heated ore and for sluicing undissolved waste salts. In 1948, the refinery built cooling towers that recirculated the water, "drastically reducing" the use of water from the Pecos River for cooling. After 1948, "practically 100 percent of the water diverted into the Loving Refinery was consumptively used."

{4}    Overall, during its near forty-year operation, the Loving Refinery was successful, and Intrepid continually upgraded and increased its production capacity. However, its success was not without occasional difficulty. In 1958, the potash industry experienced higher costs, lower prices, increased foreign production, and overproduction of potash. Despite these obstacles, Intrepid was able to invest consistently in its operations and reached peak production in the 1950s and early 1960s. The refinery continued to use water as necessary for the demand of their production.

{5} In 1963, the company had its highest ever potash sales despite economic strife and persistent drought conditions affecting the availability of surface water supply. Intrepid "successfully divert[ed] the surface flows of the Pecos River at a constant rate for many years" reaching the maximum amount of water diverted in 1963, consumptively using 5,813.6 afy. Further, despite filing for and being granted a permit for a supplemental well to address variable surface water supply, Intrepid never used the supplemental well because the surface water supply of the Pecos River available to them at the Loving Refinery, even during drought, was sufficient to meet their demand.

{6} In the late 1960s and early 1970s the quality of the ore in the mine which supplied the Loving Refinery declined. To address this problem, Intrepid built a new refinery closer to the mine site and secured separate ground water rights for the new refinery. The source for the new water rights was the Ogallala Aquifer shallow water basin in the Lea County Basin (Caprock water). Intrepid opened the new refinery but did not apply to move their Pecos River water rights to the new refinery location. Despite filing applications for extensions of time with the OSE to put the Pecos River water to beneficial use, Intrepid did not intend to use the Pecos River water because it "did not consider the Pecos River water to be suitable for its needs." Instead, because it considered the Pecos River water rights "to be a valuable, marketable

asset," it made a purely business decision to close the Loving Refinery in 1973. Eventually, Intrepid "dismantled the works necessary to use [its] Pecos River water rights at the Loving Refinery."

{7} Knowing loss of its water rights was possible if the Pecos River rights were not placed to beneficial use, Intrepid began negotiations with third parties to transfer the rights. Its efforts resulted in only one agreement with United Salt Corporation to divert 150 afy.

{8} In 1978, because of the risk of statutory forfeiture, under advisement from the OSE, Intrepid began applying to the OSE for extensions of time to place the water to a beneficial use. Intrepid sought and obtained twenty-five extensions of time from 1978 to 2017 continually claiming there was not enough water in the Pecos River to divert. However, Intrepid could not use the water beneficially because they had dismantled the refinery and the diversion structures.

{9} In 1991, the OSE declined to grant additional extensions unless Intrepid could demonstrate its efforts to place the water to beneficial use. However, the OSE granted a subsequent extension because Intrepid was negotiating a water conservation agreement with the Interstate Stream Commission (ISC) at the time. From 1995 until 2001 Intrepid was a party to a water conservation agreement with the ISC, which assigned the water rights, except what was promised to United Salt

5

Corporation, to the ISC. The assignment of the water rights to the ISC, however, was not for beneficial use, as it was to conserve, not use the water. The ISC paid a nominal fee to Intrepid for the water but declined to extend the agreement after 2001 because of concerns about the validity of Intrepid's water rights.

{10}     In 2001, the ISC formed ad hoc Pecos River Basin Committee in which Intrepid was included to work collaboratively to "ensure long-term compliance with the Pecos River Compact."[3] Two years later, after meeting with the various water users, the committee came to a collaborative agreement—the Pecos River Settlement Agreement (Settlement Agreement). Along with this Settlement Agreement the ISC issued a final report of the settlement terms. The Settlement Agreement noted it did not include diversion of water to Intrepid because it had a zero-diversion history; its water rights were not being used. The Settlement Agreement was part of the partial final decree in *State ex rel. Off. of State Eng'r v. Lewis*, 2007-NMCA-008, ¶ 3, 141

---

[3]The Pecos River Compact, approved by Congress in 1949, is an agreement between New Mexico and Texas that ensures equitable diversion of Pecos River water between the two states. *See generally*, the Pecos River Compact. The Settlement Agreement was entered to achieve durable, collaborative solutions to ensure compliance with the Pecos River Compact. As Respondents point out, "The Pecos Settlement Agreement was negotiated based on the reasonable expectations of the settling parties that the *South Springs* abandonment test would govern dormant water rights. . . . If Intrepid could revive its water right . . . it could capture over 5,600 afy . . . wiping out most of the benefits, in terms of state line deliveries, of the painstakingly negotiated agreement."

N.M. 1, 150 P.3d 375. Because the Settlement Agreement was part of the partial final decree, the Court of Appeals provided Intrepid notice and the opportunity to object to the decree and/or the Settlement Agreement. *Id.* ¶¶ 15-16. Intrepid did not object.

**B. History of this Litigation**

{11} In 2016 or 2017, Intrepid made improvements to diversion structures and filed applications to change the purpose of use for some of its Pecos River water rights, resulting in objections by the ISC and others to the applications and an OSE administrative proceeding. During the OSE administrative proceeding, several parties to it filed a complaint in district court requesting an expedited inter se adjudication of Intrepid's water rights. Ultimately, in 2019, the parties agreed to a legal inter se proceeding to determine if Intrepid had forfeited or abandoned its water rights and stayed the OSE administrative proceeding.

{12} The bench trial before the district court was held in December of 2020. After the bench trial, but prior to the district court issuing its findings of fact and conclusions of law, the Court of Appeals issued its opinion in *State ex rel. Off. of State Eng'r v. Elephant Butte Irrigation Dist.*, 2021-NMCA-066, 499 P.3d 690 (hereinafter *Gray*), which addressed abandonment of water rights. Accordingly, the district court allowed supplemental briefing regarding the impact of *Gray* on the

7

proceedings. After the briefing was complete, the district court amended its findings of fact and conclusions of law and determined Intrepid had collectively abandoned and forfeited all but 150 afy of its Pecos River Water rights. The district court found that "[s]ince 1974, no water was put to beneficial use at the Loving Refinery, the licensed place of use, for the licensed purpose of use." Thus, the Court concluded "[t]here is clear and convincing evidence that Intrepid . . . abandoned [its] Pecos River water rights before 2017" and Intrepid's speculation of its water rights did not excuse its abandonment.

{13}    Intrepid appealed the district court's rulings in *Carlsbad Irrigation Dist. v. D'Antonio*, A-1-CA-39378, and in *State ex rel. Off. of State Eng'r v. Intrepid Potash, Inc.*, A-1-CA-40372. The Court of Appeals consolidated the cases because the issues stemmed from the same underlying proceedings and involved many of the same parties. *Carlsbad Irrigation Dist. v. D'Antonio*, 2024-NMCA-024, ¶ 1, 544 P.3d 276. On appeal, the Court of Appeals affirmed the district court's judgment, concluding, in part, that the district court had not erred in its application of abandonment jurisprudence, that substantial evidence supported abandonment, and that Intrepid engaged in speculation, which provided no basis to excuse its nonuse. *Id.* ¶¶ 42, 47-

52. Intrepid petitioned this Court for certiorari on the abandonment ruling, which we granted.[4]

## III. DISCUSSION

{14} The overarching issue in this matter is the proper test for abandonment of water rights. Intrepid argues the Court of Appeals erred by "confus[ing] the doctrine of abandonment with forfeiture" and in its application of the test for abandonment as provided in *South Springs*, 1969-NMSC-023, ¶¶ 12, 22. Intrepid contends the Court of Appeals and district court should have instead applied the seven-factor test adopted in *Gray*, 2021-NMCA-066, ¶ 111. Intrepid also argues the Court of Appeals erred in rejecting its assertion that concerns over water speculation are addressed by the forfeiture statute, and that speculation is not evidence of abandonment. Respondents likewise seek the Court's clarification of the test for abandonment of water rights.

{15} We affirm, with clarification, the Court of Appeals' application of the *South Springs* abandonment test and the Court's conclusion that Intrepid abandoned all but

---

[4]The district court made specific findings of fact related to abandonment and forfeiture which Intrepid does not challenge on appeal. Therefore, this Court takes as conclusive the district court's unchallenged findings. *See Stueber v. Pickard*, 1991-NMSC-082, ¶ 9, 112 N.M. 489, 816 P.2d 1111 (holding an unchallenged finding of the district court is binding on appeal).

150 afy of its Pecos River water rights. We also affirm the Court of Appeals' analysis regarding water speculation.

**A. Standard of Review**

{16} Intrepid challenges the district court's and Court of Appeals' applications of common law abandonment. The question of whether the district court and Court of Appeals correctly applied the standard is a purely legal question reviewed de novo. *See State ex rel. Off. of State Eng'r v. Romero*, 2022-NMSC-022, ¶ 9, 521 P.3d 56. We review the factual findings for substantial evidence. *Id.* ¶ 10.

**B. Beneficial Use**

{17} "The prior appropriation doctrine governs water law in New Mexico." *Walker v. United States*, 2007-NMSC-038, ¶ 21, 142 N.M. 45, 162 P.3d 882. Indeed, New Mexico's adoption of prior appropriation preceded statehood. *See Trambley v. Luterman*, 1891-NMSC-016, ¶ 4, 6 N.M. 15, 27 P. 312 (holding "prior occupancy gives prior title" (internal quotation marks and citation omitted)). The doctrine derives from the customary water practices originated by the people of New Mexico and "applied by the people, and as it had always existed from the first settlement of this portion of the country." *State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 28, 135 N.M. 375, 89 P.3d 47 (quoting *Snow v. Abalos*, 1914-NMSC-022, ¶ 9, 18 N.M. 681, 140 P. 1044). Under this system, senior water rights appropriators

are granted priority over junior rights appropriators. *See Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 45, 289 P.3d 1232 (stating senior water rights may curtail junior water rights).

{18}     In relevant part, pursuant to prior appropriation, "water rights are both established and exercised by beneficial use, which forms 'the basis, the measure and the limit of the right to the use of water.'" *Carlsbad Irrigation Dist.*, 2024-NMCA-024, ¶ 23 (quoting N.M. Const. art. XVI, § 3); *State ex rel. Off. of State Eng'r v. United States*, 2013-NMCA-023, ¶ 20, 296 P.3d 1217. In other words, "[the] right must be exercised or lost; one cannot sit on water rights to the exclusion of any other claimant without putting them to beneficial use." *Walker*, 2007-NMSC-038, ¶ 22. Thus, beneficial use is the constitutional principle that determines the right to the use of water.

**C.     Forfeiture v. Abandonment–a Question of Intent**

{19}     Intrepid asserts "the trial court and the Court of Appeals impermissibly confused the doctrine of abandonment with forfeiture" and under an appropriate application of abandonment law there was no clear and convincing evidence of Intrepid's intention to abandon its rights. We disagree.

{20}     While forfeiture and abandonment are distinct mechanisms with different requirements, they are derived from, and serve to vindicate, the same constitutional

11

prerogative: beneficial use. *See Romero*, 2022-NMSC-022, ¶ 13 ("Because beneficial use is a grounding principle in our water law policy, the Court has rejected other theories of water ownership that are incompatible with the beneficial use provision of Article XVI, including theories that ignore the possibility that users can forfeit their rights."); *State ex rel. Martinez v. McDermitt*, 1995-NMCA-060, ¶ 23, 120 N.M. 327, 901 P.2d 745 (concluding there was no abandonment or forfeiture because there was evidence of beneficial use). The fundamental difference between statutory forfeiture and common law abandonment is intent. *See South Springs*, 1969-NMSC-023, ¶ 9; *Gray*, 2021-NMCA-066, ¶¶ 104, 108. "[F]orfeiture is a punishment annexed by law to some illegal act, as abandonment of a right is present only when intentional relinquishment occurs." *South Springs*, 1969-NMSC-023, ¶ 11 (emphasis, internal quotation marks, and citation omitted).

{21} In a forfeiture proceeding, failure to put water rights to beneficial use for four years jeopardizes continued use of the right. NMSA 1978, § 72-5-28(A) (2002). The water rights holder may forfeit all or part of their water rights based on how much water has been beneficially used. *Id.* Further, unlike abandonment, imposition of forfeiture requires notice and an opportunity to cure. *Id.* The water rights holder must return to beneficial use within one year, unless the water user can provide some evidence of a fact or condition that excuses the nonuse. *Id.* Forfeiture does not

12

require intent; it only requires statutorily defined nonuse of the water right. *Id.*; *South Springs*, 1969-NMSC-023, ¶ 11.

{22}     Correspondingly, common law abandonment is the judicial mechanism by which courts vindicate the constitutional mandate of beneficial use. Because water rights are distinct from other property rights in that they are usufructuary in nature, possession is perfected by use of the right. *See Walker*, 2007-NMSC-038, ¶ 22 ("As a result of the separate and distinct nature of a water right, that right must be exercised or lost."). Hence, "a water right is not an automatic stick in the bundle of rights." *Id.* ¶ 21. Rather, "a water right is something vastly different. . . . [It is] dependent on the continuous use of the water, and a failure to comply with this condition subjects the right to loss by abandonment." *Knapp v. Colo. River Water Conservation Dist.*, 279 P.2d 420, 425 (Colo. 1955) (en banc).

{23}     Therefore, the common law principle of abandonment coheres to the constitutional imperatives of prior appropriation and beneficial use to form the basis of regulation of water rights in the state. *See Albuquerque Land & Irrigation Co. v. Gutierrez*, 1900-NMSC-017, ¶¶ 26-27, 10 N.M. 177, 61 P. 357 (holding the doctrine of prior appropriation replaced the common law and "[a]ll the right obtainable in the water of public streams of the territory is the right to appropriate so much thereof as

13

is actually used for some beneficial and legal purpose. This appropriation may become a vested right by continuous use, or it may be lost by non-use").

{24}     Abandonment applies in the water rights context to mean "to discontinue, desert, relinquish, surrender, vacate or give up." *Knapp*, 279 P.2d at 425. Accordingly, extended nonuse of a water right may give rise to the presumption of the intent to abandon. *See Gray*, 2021-NMCA-066, ¶ 104 ("Nonuse is competent evidence on the question of abandonment and if continued for an unreasonable period of time may create a presumption of intention to abandon."); *see also Millheiser v. Long*, 1900-NMSC-012, ¶ 9, 10 N.M 99, 61 P. 111 ("[I]f such nonuse be continued for an unreasonable period, it may fairly create a presumption of intention to abandon." (internal quotation marks and citation omitted)). However, nonuse of a water right is not itself an abandonment. *Gray*, 2021-NMCA-066, ¶ 104. Concretely, "[a]bandonment requires the confluence of both intention and act." *Id.* Thus, like the majority of western states,[5] New Mexico applies abandonment as a

---

[5]*See, e.g.*, *Revert v. Ray*, 603 P.2d 262, 264 (Nev. 1979) ("Abandonment, requiring a union of acts and intent, is a question of fact to be determined from all the surrounding circumstances." (citation omitted)); *Gould v. Maricopa Canal Co.*, 76 P. 598, 601 (Ariz. 1904) ("Abandonment is a matter of intent as such intent may be evidenced by the declaration of the party, or as may be fairly inferred from his acts."); *Utt v. Frey*, 39 P. 807, 809 (Cal. 1895) ("To constitute such abandonment, there must be a concurrence of act and intent." (citations omitted)).

14

common law principle querying whether a water rights holder had the intent to abandon with the burden "on the party asserting abandonment to provide proof by clear and convincing evidence." *Id.* (citation omitted).

**D.  Abandonment Jurisprudence**

**1.  *South Springs* abandonment test**

{25}  In *South Springs*, this Court announced the definitive test for abandonment of water rights. 1969-NMSC-023, ¶¶ 12, 22. There, we considered whether the district court erred in concluding the appellants "lost their water rights by abandonment, forfeiture[,] or nonuse." *Id.* ¶ 1. The appellants, who had not utilized their water rights for thirty-two years and had allowed the ditches and canals carrying the water to go unmaintained or be closed altogether, argued a lack of intent to abandon the rights. *Id.* ¶¶ 7-8. The Court separately analyzed the doctrines of both forfeiture and abandonment, *id.* ¶¶ 8-23, concluding the district court's findings of fact and conclusions of law were supported by substantial evidence. *Id.* ¶ 24. The *South Springs* Court observed that "the element of intention is required in the doctrine of abandonment. This is not so in forfeiture." *Id.* ¶ 10 (citation omitted). In addressing abandonment, the Court cited several Colorado cases to distill the common law principle that now governs abandonment in New Mexico: "But where by clear and convincing evidence it is shown that for an unreasonable time available water has

15

not been used, an intention to abandon may be inferred in the absence of proof of some fact or condition excusing such nonuse." *Id.* ¶ 22 (quoting *Commonwealth Irrigation Co. v. Rio Grande Canal Water Users' Ass'n.*, 45 P.2d 622, 623 (Colo. 1935)). Thus, the test for common law abandonment as articulated in *South Springs* provides the following:

> [(1)] abandonment is the relinquishment of the right by the owner with the intention to forsake and desert it;
>
> . . . .
>
> [(2)] proof of nonuse for an unreasonable period establishes a presumption of abandonment and is prima facie proof thereof;
>
> . . .
>
> [(3)] to rebut the presumption of abandonment arising from such long period of nonuse, there must be established not merely expressions of desire or hope or intent, but some fact or condition excusing such long nonuse.

*Id.* ¶¶ 9, 21 (internal quotation marks and citations omitted).

{26}     Under the standard in *South Springs*, the abandonment inquiry is a fact-intensive inquiry in which the Court assesses the circumstances surrounding the nonuse in order to effectuate the constitutional imperative of beneficial use, not a prescriptive test or particularized checklist of actions or inactions tending to prove or rebut abandonment. *See id.* ¶ 9 ("By the forfeiture of the rights which are claimed by appellants, but who failed to use them, the policy of our constitution (Art. XVI,

16

§§ 1, 2 and 3) and statutes (§ 75-11-2, N.M.S.A. 1953 Comp.) is fostered, and the waters made to do the greatest good to the greatest number.").

**2.** *Gray* **abandonment test**

{27} In *Gray*, the Court of Appeals considered whether the trial court appropriately analyzed the evidence in determining that appellants' "water rights had been abandoned" through nonuse. 2021-NMCA-066, ¶¶ 1, 99-100. Significantly, the trial court did not enter any findings concerning the intent to abandon. *Id.* ¶ 100. The *Gray* Court reversed the trial court's abandonment ruling, reasoning the appellants offered evidence concerning conditions that excused their extended nonuse and evidence they did not intend to abandon their water rights. *Id.* However, because the trial court neglected to analyze the appellants rebuttal evidence, the Court of Appeals remanded the case for further consideration of the evidence of whether and to what extent the appellants put the water to use. *Id.* ¶ 99.

{28} *Gray* succeeded a line of New Mexico cases in which courts applied the *South Springs* abandonment test. *See Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 32, 141 N.M. 21, 150 P.3d 971; *McDermett*, 1995-NMCA-060, ¶ 16; *State ex rel. State Eng'r v. Monteverde*, A-1-CA-35398, mem. op. ¶ 22 (N.M. Ct. App. Dec. 14, 2018) (nonprecedential); *State ex rel. State Eng'r v. Faykus*, A-1-CA-36848, mem. op. ¶ 18 (N.M. Ct. App. Apr. 13, 2020) (nonprecedential). Yet, in reaching its

holding, the *Gray* Court did not rely on *South Springs*—characterizing *South Springs* as a forfeiture case that "did not lay down a general rule of abandonment"—and instead adopted the seven-factor abandonment test from *East Twin Lakes Ditches and Water Works, Inc. v. Board of County Commissioner of Lake County*, 76 P.3d 918, 922 (Colo. 2003). *Gray*, 2021-NMCA-066, ¶¶ 110, 111, 113 (citation omitted). In *East Twin Lakes*, the Colorado Supreme Court described the factors Colorado courts have considered as indicative of an intent not to abandon a water right: "(1) repair and maintenance of diversion structures, (2) attempts to put the water to beneficial use, (3) active diversion records and non-appearance of the water right on the [s]tate [e]ngineer's abandonment list, (4) diligent efforts to sell the water right[s], (5) filing documents to protect, change, or preserve the right, (6) leasing the water right, and (7) economic or legal obstacles to exercising the water right." 76 P.3d at 922 (citations omitted).

{29} In its discussion of abandonment, the *Gray* Court suggested, incorrectly, that "New Mexico has not had occasion to consider what type of evidence is sufficient to meet the presumption of abandonment in the absence of a statutory influence." 2021-NMCA-066, ¶ 109, and that *South Springs*' discussion of the same was merely dicta. *Id.* ¶ 110. The Court of Appeals, therefore, undertook to adopt what it considered a workable framework for the benefit of adjudicating courts in assessing

18

abandonment. *Id.* Adopting the Colorado seven-factor test, the *Gray* Court concluded that while "[n]one of the factors is deemed conclusive . . . they may be enough to rebut the presumption of abandonment." *Id.* ¶¶ 111, 113.

{30}     There are two primary issues with the *Gray* test that render the Court of Appeals' adoption of the Colorado seven-factor test problematic. First, the concluding sentence in the Colorado seven-factor test announced in *East Twin Lakes* adopted the rationale that "if these factors are insufficient or nonexistent, *only then* is the failure to put the water to a beneficial use enough by itself to sustain a finding of abandonment." 76 P.3d at 922 (emphasis added). The inclusion of "only then" necessarily implies the test is exclusive by divorcing the factors from a court's evaluation of beneficial use. This rationale suggests the presumption of intent to abandon can be rebutted by providing evidence of any of the seven factors alone. Indeed, Intrepid argues as much, asserting that by establishing some of these factors, they have sufficiently rebutted the presumption of intent to abandon.

{31}     Moreover, the inclusion of "only then" necessarily creates a mandatory rather than permissive test, thereby impeding the trial court's discretion to assess what evidence is sufficient to rebut the presumption of abandonment. The inclusion of "only then" converts the essential inquiry from a broad one appraising action or inaction, to one in which the factors constrain what facts a court can consider. This

19

is despite *Gray*'s own recognition that "the question is peculiarly within the province of a trial court to determine from all the facts and circumstances of each particular case whether abandonment has or has not taken place." 2021-NMCA-066, ¶ 104 (internal quotation marks and citation omitted). Importantly, the *Gray* Court declined the appellees' interpretations of the law of abandonment, observing that, "if accepted, [appellees' interpretation] would narrow the kind of evidence adjudication courts could take into account in making their decisions." *Id.* ¶ 102. Further, the Court of Appeals remanded the case to the trial court not based on the factors alone, but because the lower court neglected to make findings related to abandonment. *Id.* ¶ 100.

{32} Second, the seven-factor test incorporates elements of abandonment as codified in the Colorado statute. For example, factor three—"active diversion record and non-appearance of the water right on the State Engineer's abandonment list"— is inapplicable in our common law abandonment because it is based upon a Colorado statute that has no analog in New Mexico. *East Twin Lakes*, 76 P.3d at 922 (citation omitted); *see* Colo. Rev. Stat. § 37-92-402(11) (1998). For this reason, Intrepid's argument that the district court should have weighed factor three by considering the statutory extensions it filed with the OSE to be similar to non-appearance on the Colorado State Engineer's abandonment list is unpersuasive. To the contrary, in

New Mexico extensions of time are statutory mechanisms which water rights holders leverage to avoid statutory forfeiture. *See* § 72-5-28(B).

**3.      Harmonizing *South Springs* and *Gray*, and clarifying our abandonment test**

{33}     Despite the shortcomings in *Gray*, *South Springs* and *Gray* can be read in harmony. *South Springs* continues to be the controlling authority on abandonment. Nonetheless, the *Gray* factors are a non-exclusive list of actions inconsistent with the intent to abandon a water right or the kinds of facts or conditions that may excuse nonuse once a presumption of abandonment has been established as described in *South Springs*. *See* 1969-NMSC-023, ¶¶ 12, 22. By explicitly permitting the presumption of abandonment to be rebutted with not only evidence excusing nonuse but also evidence inconsistent with an intent to abandon a water right, *Gray* clarifies *South Springs*. With this in mind, we clarify the abandonment test. First, intent may be established either expressly or implicitly. *Id.* ¶ 12. "It may be effected by a plain declaration of an intention to abandon [the right]; and it may be inferred from acts or failures to act so inconsistent with an intention to retain [the right] that the unprejudiced mind is convinced of the renunciation." *Id.* (internal quotation marks and citations omitted). Clear and convincing evidence of an unreasonably long period of nonuse constitutes circumstantial evidence of intent to abandon a water right strong enough to warrant a presumption of abandonment. *Id.* ¶¶ 8, 21. However,

21

our case law does not establish a bright line rule for what constitutes an unreasonable period of nonuse of a water right. For example, New Mexico appellate courts have upheld findings related to periods of unreasonably long nonuse ranging from twenty-four to thirty-five years. *See Monteverde*, A-1-CA-35398, mem. op. ¶ 24; *Faykus*, A-1-CA-36848, mem. op. ¶ 19; *cf. South Springs*, 1969-NMSC-023, ¶ 22 (recognizing Colorado cases have upheld findings related to nonuse as unreasonable for periods of eighteen, thirty, and forty years). Instead, the burden is on the party asserting abandonment to establish the unreasonably long period of nonuse by clear and convincing evidence. *South Springs*, 1969-NMSC-023, ¶¶ 21-22. When the presumption of intent to abandon a water right has been established by clear and convincing evidence showing an unreasonably long period of nonuse, the burden shifts to the rights-holder to rebut the presumption. *Id.* ¶¶ 20, 22 ("[T]the burden of proof shifts to the holder of the right to show the reasons for nonuse." (citation omitted)).

{34} The necessity of evidence to rebut the presumption of abandonment is vindication of the constitutional mandate of beneficial use. Thus, the evidence must show more than an "expression[] of desire or hope or intent" but some actual fact, condition, or act that (1) excuses the nonuse, *South Springs*, 1969-NMSC-023, ¶ 21, or (2) reveals actions inconsistent with an intent to abandon the water right, *Gray*,

2021-NMCA-066, ¶ 111. To determine whether the presumption is sufficiently rebutted, when such evidence is provided, it is at the discretion of the trial court to weigh the evidence of facts or conditions excusing nonuse along with actions or inactions demonstrating the water rights holder did not intend to abandon their water rights. *South Springs*, 1969-NMSC-023, ¶ 22.

{35} With this clarification of the relationship between *South Springs* and *Gray*, in addition to clarification of our abandonment test, we turn to Intrepid's arguments.

**E.   Intrepid's Claims of Error**

{36} Here, Intrepid does not challenge the district court's finding that its actions amount to an unreasonable period of nonuse. Instead, Intrepid, argues the district court erred in applying the requisite standard for abandonment of a water right and its actions demonstrate, by clear and convincing evidence, that it did not intend to abandon its water rights sufficient to rebut the presumption of abandonment. Relatedly, Intrepid contends the *Gray* seven-factor test militates in favor of the Court finding no intent to abandon. Confoundingly, however, Intrepid contends *South Springs* was superseded by *Gray*, indicating *Gray* is the precedential authority on abandonment. But, a Court of Appeals opinion cannot supersede a Supreme Court opinion. Nonetheless, *South Springs* and *Gray*, as discussed herein, are not at odds.

23

**1.   The Court of Appeals properly applied *South Springs***

{37}   Intrepid makes two arguments that the lower courts incorrectly applied the law and, thus, reversal is warranted. First, Intrepid argues the Court of Appeals erred in affirming the district court's application of the intent requirement of the abandonment test. Specifically, Intrepid argues that "the relevant intent is the intent to abandon . . . *not* the intent to beneficially use the Pecos River water for its licensed purpose of use." (quoting *Gray*, 2021-NMCA-066, ¶ 100 (internal quotation marks omitted)). Thus, Intrepid claims its sporadic efforts to sell or lease the water rights and filing extensions of time demonstrate an intent not to abandon a right. Further, Intrepid argues evidence of its intent to preserve its water rights is consistent with the requirements set forth in *Gray*.

{38}   Critically, the constitutional mandate of beneficial use grounds this inquiry. N.M. Const. art. XVI, § 3. Therefore, intent not to abandon cannot be proved by "expressions of desire or hope or intent." *South Springs*, 1969-NMSC-023, ¶ 21 (internal quotation marks and citation omitted). The district court and the Court of Appeals acknowledged Intrepid filed extensions of time, attempted to lease and sell the rights, and attempted to change the point of diversion. As discussed previously, Intrepid's extensions of time are not cognizable under our abandonment test. These other actions are but mere "expressions of desire or hope or intent", and it was the

24

province of the district court to give the evidence appropriate weight in determining if Intrepid sufficiently demonstrated an intent not to abandon its water rights. *See South Springs*, 1969-NMSC-023, ¶ 22. As clarified, evidence of intent to preserve water rights merely *consistent* with the *Gray* requirements is not sufficient to rebut the presumption of abandonment in Colorado where the test was established, nor in New Mexico.

{39} Second, Intrepid claims the Court of Appeals' consideration of the excuse for nonuse of the water rights converted abandonment into forfeiture and that doing so deprived them of the due process notice and opportunity to remedy the nonuse.

{40} As discussed at length above, forfeiture and abandonment are distinct concepts designed to protect beneficial use. The main distinguishing factor between statutory forfeiture and common law abandonment is intent. *See id.* ¶ 9. Accordingly, the district court's analysis of intent pursuant to *South Springs* was wholly proper. In addition, abandonment does not provide for an "opportunity to remedy" nonuse. This is a feature only available in statutory forfeiture. Section 72-5-28(B)-(D). Thus, Intrepid's purported lack of opportunity to remedy its presumed abandonment was not in error.

25

## 2. Intrepid's abandonment of its water rights is supported by sufficient evidence

{41} To support its assertion that it "took steps to preserve its water rights" sufficient to rebut abandonment of its water rights, Intrepid relies on (1) its applications for extensions with the OSE; (2) its "efforts to sell, lease, or otherwise transfer its water rights"; (3) its effort to improve diversion structures between 2016-2018; and (4) "economic and legal obstacles" that excuse its nonuse.

{42} In its review of the evidence, the Court of Appeals properly considered and rejected Intrepid's arguments. *Carlsbad Irrigation Dist.*, 2024-NMCA-024, ¶¶ 42-52. The Court, indulging all presumptions in support of the district court's findings of fact, determined that there was substantial evidence to support the conclusion that Intrepid abandoned its water rights. *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341 (stating in our review of the record for substantial evidence, we do not reweigh the evidence, and indulge all reasonable inferences in support of the district court's decision).

{43} Abandonment must be supported by clear and convincing evidence. *South Springs*, 1969-NMSC-023, ¶ 22; *Gray*, 2021-NMCA-066, ¶ 104. On appellate review, the Court considers this heightened standard. *Powers v. Miller*, 1999-NMCA-080, ¶ 14, 127 N.M. 496, 984 P.2d 177. The question on appeal, however, is whether abandonment is supported by substantial evidence, "not whether the

26

evidence would have supported different findings." *Id*. Stated differently, "we will not reweigh the evidence, . . . [but instead] will view the evidence in the light most favorable to the outcome below, . . . [and] will review the evidence to determine whether a reasonable fact finder could find that it clearly and convincingly supports the trial court's findings of fact." *Twin Forks Ranch, Inc. v. Brooks*, 1998-NMCA-129, ¶ 9, 125 N.M. 674, 964 P.3d 838 (citations omitted). If there is any conflict in the evidence, we defer to the trier of fact. *See Stueber v. Pickard*, 1991-NMSC-082, ¶ 9, 112 N.M. 489, 816 P.2d 1111.

{44} Intrepid does not challenge the district court's findings of fact. It only challenges the application of the law of abandonment to the undisputed facts. Unchallenged findings of fact are binding on appeal. *See id*.

{45} Intrepid asserts its applications for extensions of time with the OSE demonstrate it did not intend to abandon its water rights and that pursuant to *Gray*, this is evidence consistent with the Colorado State Engineer's abandonment list. As discussed previously, Intrepid's extensions of time are not cognizable under our abandonment test. Accordingly, while the district court found that Intrepid applied for and received twenty-five extensions of time, it also found that the OSE's grant of these extensions "were not statements as to the viability of the water rights." The district court also found, by clear and convincing evidence, that during the forty-four

years Intrepid applied for extensions, it did not undertake efforts to put the water to beneficial use, rather it was only attempting to delay its use. These findings support the district court's determination that the extensions of time never resulted in beneficial use of the Pecos River water.

{46} Intrepid also contends it diligently tried to sell, lease, or transfer its rights, and that these facts undermine any intent to abandon its water rights. This assertion is wholly rejected by the undisputed facts. As argued by the OSE and ISC, the record establishes Intrepid's only real effort to sell, lease, or transfer its water rights was to United Salt. Intrepid's agreement with the ISC to defer use of its water rights was not evidence of beneficial use. And, its attempts to sell its water rights were stymied because of questions regarding the validity of the rights. Further, the district court found Intrepid's attempt to lease water to the City of Carlsbad was only to avoid forfeiture and "would not have put [the] water rights to beneficial use." Intrepid did not show more than an "expression of desire or hope or intent" not to abandon its water rights and this evidence was more than sufficient to rebut Intrepid's argument.

{47} The district court also found Intrepid's dismantling of the refinery was consistent with abandonment. The evidence establishes by clear and convincing evidence the dismantling of the refinery infrastructure began in 1973 and its state of disrepair extended until 2016 or 2017. It is this period of time, *forty-three to forty-*

*four years*, that supports the presumption that Intrepid intended to abandon its water rights for the refinery. Its improvement to the diversion infrastructure in 2016 or 2017, to lease the water rights to oil and gas operations, was too late. Thus, Intrepid's argument that its improvements to the infrastructure belies its intent to abandon its water rights does not avail.

{48}   With regard to the economic and legal factors that purportedly excused Intrepid's nonuse of its water, the district court found these types of concerns did not drive Intrepid to dismantle its refinery. Rather, it was its decision to construct a new plant at a site closer to the mine and secure new water rights, that caused Intrepid to close the refinery. It was an internal business decision to close the refinery that foreclosed Intrepid's ability to use its Pecos River water rights, not external economic factors. Further, no facts were presented to establish legal impediments to Intrepid's use of its water rights. Therefore, this argument does not avail.

{49}   In sum, the district court found Intrepid filed extensions of time, attempted to lease and sell the rights, and later attempted to change the point of diversion and purpose of use to prolong the water right all without beneficially using that right. And so, the ultimate conclusion—abandonment—is supported by substantial evidence.

### 3. Water speculation is inconsistent with beneficial use

{50} The district court concluded "[b]y holding their Pecos River water rights for future sale or lease, Intrepid precluded others from using the water." The district court concluded this holding of the rights was speculation and that "[w]ater rights speculation is contrary to the doctrines of beneficial use and prior appropriation." We agree.

{51} In passing, Intrepid takes issue with the Court of Appeals' affirmance of the district court's conclusion that Intrepid's intent to hold its water rights was speculative and thus demonstrated abandonment. In doing so, Intrepid argues "New Mexico's forfeiture statute provides a remedy for speculation that encourages beneficial use by providing notice and an opportunity to cure." It further asserts that anti-speculation is "internally inconsistent" with abandonment, because speculation is "an intent to hold a right for future use." Intrepid's position suffers from the same infirmity under either forfeiture or abandonment—the failure to put the Pecos River water rights to beneficial use. *See McDermett*, 1995-NMCA-060, ¶ 10 ("An intended future use is not sufficient to establish beneficial use if the water is not put to actual use within a reasonable span of time."). As Respondents correctly counter, "[t]he requisite intent to rebut the presumption of abandonment . . . must be an intent to *use*

*the water*, not just to hold onto title of the water right until such time as it can most profitably be leased or sold."

{52}   Critically, we reiterate the constitutional mandate of beneficial use grounds the inquiry. N.M. Const. art. XVI, § 3. Therefore, intent not to abandon cannot be proved by "expressions of desire or hope or intent," and mere speculation as to use of the water right is insufficient to rebut the presumption of abandonment. *South Springs*, 1969-NMSC-023, ¶ 21 (internal quotation marks and citation omitted); *Knapp*, 279 P.2d at 426-27. Indeed, "[s]peculation on the market, or sale expectancy, is wholly foreign to the principle of keeping life in a proprietary right and is no excuse for failure to perform that which the law requires." *Knapp*, 279 P.2d at 427.

{53}   Water speculation occurs when a water rights holder diverts and stores water for sale or future economic opportunities. *See Front Range Res., LLC v. Colo. Ground Water Comm'n*, 2018 CO 25, ¶ 3, 415 P.3d 807 ("The anti-speculation doctrine prohibits changes of water rights or new appropriations based on a speculative sale or where an applicant has not demonstrated a specific plan and intent to put the water to beneficial use."); *Pub. Util. Dist. No. 1 of Pend Oreille Cnty. v. State Dep't of Ecology*, 51 P.3d 744, 756 (Wash. 2002) (en banc) (expressing concern over a water rights owner waiting for improved economic conditions prior to sale). Concerns over water speculation have given rise to what is referred to as the

31

"anti-speculation doctrine." *Front Range*, 2018 CO 25, ¶ 3. The doctrine supports the right to appropriate and beneficially use water, not to speculate. *See id.* ¶¶ 18-20 (citing *Colo. Water Conservation Dist. v. Vidler Tunnel Water Co.*, 594 P.2d 566, 566-68 (Colo. 1979) (articulating the anti-speculation doctrine)); *Pub. Util. Dist. No. 1*, 51 P.3d at 755-56 (distinguishing beneficial use and waiting for economic benefit).

{54}     "The law of all western states prohibits speculation, either explicitly or through requirements that water be applied continuously to actual, beneficial use." Sandra Zellmer, *The Anti-Speculation Doctrine and Its Implications for Collaborative Water Management*, 8 Nev. L.J. 994, 997 (2008) (footnote omitted). Although New Mexico has not, heretofore, expressly adopted an anti-speculation doctrine like Colorado and Nevada, anti-speculation is a concept imbedded in beneficial use and prior appropriation. *See McDermett*, 1995-NMCA-060, ¶ 10 ("An intended future use is not sufficient to establish beneficial use if the water is not put to actual use within a reasonable span of time."); *Bacher v. Off. of State Eng'r*, 146 P.3d 793, 799 (Nev. 2006) (adopting Colorado's anti-speculation doctrine); *see also* Doug Cannon, *Closing the Door on Water Speculations: Nevada's Adoption of the Anti-Speculation Doctrine*, 17 Nev. Law 12, 13 (2009). ("[Nevada] adopted the anti-speculation doctrine as a limitation on an entity's ability to demonstrate beneficial

use when it did not have definite plans to put water to beneficial use or a contractual relationship with an entity that had such plans." (internal quotation marks and citation omitted)).

{55} Accordingly, we join Colorado and Nevada and expressly adopt anti-speculation as a feature of our water law jurisprudence. Thus, to avoid a conclusion that one is speculating water, the water rights holder must apply the water to beneficial use. *See* NM Const. art. XVI, § 3. Because the desire of a water rights holder only to use the water later, when it is financially profitable, is the antithesis of beneficial use and is not an excuse for nonuse sufficient to rebut the presumption of abandonment, we affirm the Court of Appeals' conclusion that Intrepid's speculation "supported an intent to abandon rather than an intent to use the water." *Carlsbad Irrigation Dist.*, 2024-NMCA-024, ¶ 45.

## IV. CONCLUSION

{56} The Court of Appeals did not err in applying the *South Springs* abandonment test to conclude Intrepid's evidence did not rebut the presumption it abandoned its water rights and water speculation is contrary to beneficial use. Because Intrepid did not show sufficient evidence of either excuse for nonuse or for intent not to abandon a water right by showing intent to place the water to beneficial use, we affirm the Court of Appeals.

33

{57}    IT IS SO ORDERED.

_____
C. SHANNON BACON, Justice

WE CONCUR:


_____
DAVID K. THOMSON, Chief Justice


_____
MICHAEL E. VIGIL, Justice


_____
JULIE J. VARGAS, Justice


_____
BRIANA H. ZAMORA, Justice